**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 2, 2010

No. 09-40907

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAUL RUELAS GONZALEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:09-cr-00893

Before DeMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Ruelas pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326 and appeals his sentence of fifty-one months of imprisonment and a three-year term of supervised release based in part on a sixteen-level enhancement from Ruelas's previous criminal conviction in Michigan for manslaughter. At issue is whether the district court plainly erred by applying the enhancement. We AFFIRM.

Ruelas pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326. The probation officer assessed a sixteen-level enhancement under the U.S.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40907

Sentencing Commission Guidelines Manual (U.S.S.G.) § 2L1.2(b)(1)(A) because Ruelas had been deported to Mexico following a conviction in Michigan for manslaughter. On appeal, Ruelas objects to the enhancement, arguing that his prior conviction is not a "crime of violence" under the guidelines. *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii)

We review the district court's interpretation of the guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Because Ruelas did not object below, he must establish that the district court plainly erred by applying the enhancement. *See United States v. Infante*, 404 F.3d 376, 394 (5th Cir. 2005). Plain error is a clear and obvious error that affected the defendant's substantial rights, and even then, we may exercise our discretion to correct the error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal citation omitted).

Under the guidelines, an alien convicted of illegal reentry under § 1326 is subject to a sixteen-level enhancement if he was previously deported after committing a "crime of violence." § 2L1.2(b)(1)(A)(ii). The comments define a "crime of violence" as either one of a list of enumerated crimes or "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2, cmt. n.1(B)(iii). Although "manslaughter" is an enumerated offense, a defendant's prior conviction for manslaughter does not necessarily qualify as a crime of violence. *See United States v. Bonilla*, 524 F.3d 647, 652-55 (5th Cir. 2008). Instead, whether a prior conviction qualifies as an enumerated "crime of violence" requires this court to compare the relevant statute related to the offense with the "generic, contemporary meaning" of the offense. *See United States v. Murillo-Lopez*, 444 F.3d 337, 339 (5th Cir. 2006). "When the statute of conviction encompasses prohibited behavior that is not within the plain,

ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) (internal citation and quotation marks omitted). Therefore, the issue before us is whether Michigan's manslaughter statute encompasses behavior within the generic, contemporary meaning of manslaughter.

This court has recognized that "the recklessness standard adopted in the Model Penal Code provides the minimal necessary *mens rea* for generic contemporary manslaughter (including involuntary manslaughter)." *Bonilla*, 524 F.3d at 654 (internal citation omitted). The recklessness standard requires "proof of conscious disregard of perceived homicidal risk." *United States v. Dominguez-Ochoa*, 386 F.3d 639, 645 (5th Cir. 2004). Mere criminal negligence, in contrast, requires only that a person "should be aware of a substantial and unjustifiable risk" and is insufficient to comport with the definition of plain, ordinary definition of manslaughter. *Id.* Therefore, a manslaughter statute "will be broader than the general, contemporary definition of manslaughter—and thus not a crime of violence under the guidelines–if one of its subsections requires less than a reckless state of mind." *Bonilla*, 524 F.3d at 654.

The Michigan manslaughter statute does not define the crime; it merely provides the penalty: "[a]ny person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years." M.C.L.A. 750.321. In Michigan, the definition of manslaughter has been the province of common law. *See People v. Steubenvoll*, 28 N.W. 883, 889 (Mich. 1886). At common law, manslaughter is divided into two categories: voluntary and involuntary. *People v. Carter*, 197 N.W.2d 57, 67 (Mich. 1972). Under Michigan law, voluntary manslaughter requires the intent to kill or cause serious bodily harm. *See People v. Younger*, 158 N.W.2d 493, 495 (Mich. 1968). As distinguished from murder, voluntary manslaughter is a

No. 09-40907

"homicide which is not the result of premeditation, deliberation and malice but, rather, which is the result" of provocation and heat of passion. *Id.* This definition comports with the generic, contemporary definition of manslaughter as a crime of violence.

However, under Michigan law, involuntary manslaughter is committed by killing another by a negligent act or omission, which is also referred to as criminal negligence or "gross negligence." *See, e.g.*, *People v. Orr*, 220 N.W. 777, 779 (Mich. 1928). Gross negligence does not require the defendant to "be personally aware of the danger" or "knowingly and consciously" create the danger, only that the danger be "apparent to the ordinary mind." *People v. Jackson*, 364 N.W.2d 310, 311 (Mich. Ct. App. 1985); *see also Orr*, 220 N.W. at 779 (defining mens rea for involuntary manslaughter as the "omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent."). Thus, gross negligence in Michigan law is a lower *mens rea* than recklessness, which requires a conscious disregard of a substantial risk. *See Dominguez-Ochoa*, 386 F.3d at 646.

Here, we must first consider what subpart of the statute, voluntary or involuntary manslaughter, the defendant violated. We can look to the "charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented." *See United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008) (internal citations omitted). The Michigan indictment reflects that Ruelas was originally charged with second-degree murder by "[w]illfully, feloniously, maliciously, and with a design to effect the death of one Pepito Colon did kill and murder the said person with a knife said act not being justifiable or excusable but being without premeditation or deliberation against the peace and dignity of the people of the state of Michigan." However, the judgment shows that Ruelas was convicted by

4

a jury of the lesser-included offense of manslaughter. No charging instrument related to the lesser offense of manslaughter appears in the record.

In addition to considering the above, a district court can also "use all facts admitted by the defendant in determining whether the prior conviction qualifies as an enumerated offense under § 2L1.2." *See United States v. Mendoza-Sanchez*, 456 F.3d 479, 483 (5th Cir. 2006) (internal citation omitted). In *Mendoza-Sanchez*, the defendant admitted, during the rearraignment, that his prior state burglary conviction in Arkansas was for entering a house without permission. *Id.* This court held that, while the Arkansas burglary statute is broader than the generic meaning of burglary because it encompasses structures other than dwellings, the defendant's admission at rearraignment establishes his conviction as a crime of violence. *Id.*

Similarly, Ruelas's counsel admitted, at the sentencing hearing, that Ruelas "was in a bar fight and of course he did have a knife with him. He says the other gentleman had a gun and they had gone outside to engage in mutual combat, and it resulted in the other gentleman's death, which [Ruelas] had been repentent for his entire life." Ruelas's counsel's statement that Ruelas went outside the bar to engage in combat with a knife constitutes an admission that Ruelas voluntarily engaged in an altercation with the victim. There is no dispute that the altercation caused the death of the victim. Accordingly, that admission, along with the presentence report, precludes finding that the prior conviction was only for a negligent act—involuntary manslaughter. *See United States v. Fambro*, 526 F.3d 836, 849-50 (5th Cir. 2008) (holding that, in plain error context, courts may rely on the presentence report, along with counsel's admissions, to establish violent crime offenses in determining armed career criminal classification). Based on these admitted facts, the district court could reasonably conclude that Ruelas's prior conviction was for voluntary manslaughter. As noted above, Michigan's voluntary manslaughter definition

No. 09-40907

comports with the generic, contemporary definition of manslaughter as a crime of violence. Thus, the district court did not err by applying the sixteen-level enhancement.

Moreover, even if the admitted facts here were not enough to establish that Ruelas's prior conviction was for voluntary, not involuntary, manslaughter, we would not find plain error. At sentencing, the district court noted that defendants like Ruelas often do not realize that a prior conviction "bumps them way up," but here, where Ruelas had been convicted to forty-one months in 2003 on a reentry offense, the court thought that should have been "enough to convince you that you shouldn't ever come back again." The district court then stated that "under the circumstances here . . . the court does believe that the guidelines range provided here [with the sixteen-level enhancement] is appropriate. I am going to sentence you within that range, but I will sentence you to a low end to a term of 51 months in custody."

In sentencing Ruelas, the district court had (1) noted that Ruelas's prior sentences and multiple deportations had not deterred his illegal entry, and (2) held that a man who had killed another man with a knife outside of a bar had committed a crime of violence. Any error here does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Ellis*, 564 F.3d 370, 378-79 (5th Cir. 2009) ("[E]ven if an increase in a sentence [is] seen as inevitably 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings. To conclude that not correcting the error claimed here casts doubt upon the fairness, integrity, or public reputation of the proceeding drains all content from the doctrine of plain error.").

For the foregoing reasons, we AFFIRM.