# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40112

United States Court of Appeals
Fifth Circuit

**FILED**
April 4, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EBLIN FAVIEL OCAMPO-CRUZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:12-CR-668-1

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Elbin Faviel Ocampo-Cruz appeals from the sentence imposed by the district court following his guilty plea to being found in the United States after deportation, having previously been convicted of an aggravated felony. Ocampo-Cruz asserts that the district court erred by imposing a 16-level crime-of-violence enhancement due to his previous conviction under North Carolina General Statute § 14-32(b), which criminalizes assault with a deadly weapon inflicting serious injury (AWDWISI). For the following reasons, we find that

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40112

the least culpable act supporting a conviction for AWDWISI does not constitute a crime of violence and reverse. Ocamp-Cruz also argues that the district court erred in its assessment of his criminal history points. We affirm the district court on this issue.

## I.

On October 25, 2007, Ocampo-Cruz was involved in an automobile accident in North Carolina. In connection with the accident, he was indicted for driving while impaired and AWDWISI. The indictment states that Ocampo-Cruz "unlawfully, willfully, and feloniously did assault [the victim] with a motor vehicle, a deadly weapon, inflicting serious injury," in violation of North Carolina General Statute § 14-32(b). After his release from prison, Ocampo-Cruz, who had entered the country unlawfully, was deported to his native Honduras.

On July 10, 2012, border patrol agents encountered Ocampo-Cruz in Kenedy County, Texas. He was charged with being unlawfully present in the United States after deportation subsequent to being convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b). Ocampo-Cruz pleaded guilty. The PSR recommended a 16-level crime-of-violence enhancement pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2L1.2(b)(1)(A)(ii) due to his AWDWISI conviction in North Carolina.  Ocampo-Cruz objected to the enhancement.  The district court overruled his objection on the ground that AWDWISI is one of the enumerated offenses identified in the Sentencing Guidelines as a crime of violence, specifically aggravated assault. Ocampo-Cruz was sentenced to 96 months of imprisonment and a three year term of supervised release.  Ocampo-Cruz now appeals the district court's imposition of the crime of violence enhancement, which we review de novo. *See United States v. Esparza-Perez*, 681 F.3d 228, 229 (5th Cir. 2012).

No. 13-40112

## II.

This court uses "a common sense" approach when determining whether a state conviction qualifies as an enumerated offense for purposes of § 2L1.2(b)(1)(A)(ii).[1] *United States v. Izaguirre-Flores*, 405 F.3d 270, 273-74 (5th Cir. 2005). Under the common-sense approach, we decide whether a violation of the statute of conviction constitutes the enumerated offense as it is understood in its "ordinary, contemporary, [and] common meaning." *Id.* at 275 (citation omitted). "Our primary source for the generic contemporary meaning of aggravated assault is the Model Penal Code." *Esparza-Perez*, 681 F.3d at 231 (quoting *United States v. Torres-Diaz*, 438 F.3d 529, 536 (5th Cir. 2006)). The "statute of conviction need not perfectly correlate with the Model Penal Code; 'minor differences' are acceptable." *United States v. Mungia-Portillo*, 484 F.3d 813, 817 (5th Cir. 2007).

The Model Penal Code provides, in relevant part, that "[a] person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." MODEL PENAL CODE § 211.1(2)(a). Model Penal Code aggravated assault, therefore, requires a *mens rea* no lower than recklessness "manifesting extreme indifference to the value of human life," which we will call "extreme recklessness." Section 14-32(b), the statute of conviction in this case, provides that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon." N.C. GEN. STAT.

---

[1] In *United States v. Rodriguez*, 711 F.3d 541, 552 (5th Cir.) (en banc) *cert. denied*, 134 S. Ct. 512 (2013), we adopted "a plain-meaning approach when determining the 'generic contemporary meaning' of non-common-law offense categories enumerated in the federal sentencing enhancements." At the same time, however, we recognized that the offense of assault was defined at common law. *Id.* at 552-53 n.16-17. Accordingly, we do not employ the plain-meaning approach in this case.

No. 13-40112

14-32(b). The elements of the offense are: "(1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." *State v. Jones*, 538 S.E.2d 917, 922 (N.C. 2000). An assault under North Carolina law is "an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." *Id.* (internal quotation marks and citation omitted). The crux of the disagreement between Ocampo-Cruz and the government concerns the mental state required for AWDWISI. Ocampo-Cruz argues that the offense requires only a negligent state of mind, while the government contends that it requires recklessness.

In *State v. Jones*, the Supreme Court of North Carolina held that under North Carolina law, "an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner," and that a driver may be convicted of AWDWISI provided "there is either an actual intent to inflict injury or culpable or criminal negligence from which such intent may be implied." *Id.* at 922-923. The court further explained that "culpable or criminal negligence" means "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.* at 923 (internal quotations and citations omitted). Ocampo-Cruz argues that the "culpable or criminal negligence" described by the North Carolina courts is, at bottom, simply negligence. The government seizes on the language in *Jones* mentioning recklessness as an element of AWDWISI and argues that "culpable or criminal negligence" is a somewhat misleading label used by North Carolina courts to describe a mental state akin to the extreme recklessness required by Model Penal Code aggravated assault.

The Fourth Circuit recently addressed the question of whether "culpable negligence" under North Carolina law encompasses a *mens rea* lower than

simple recklessness. *United States v. Peterson*, 629 F.3d 432, 437-38 (4th Cir. 2011). The court first noted that recklessness requires at least a *conscious* disregard of the risk caused by one's actions. *Id.* at 436. The court then contrasted the North Carolina cases describing culpable negligence as a "*thoughtless disregard* of consequences." *Id.* at 436-37. It concluded that, although some North Carolina cases describe "culpable negligence" in terms of recklessness, "culpable negligence" nonetheless encompasses a *thoughtless*, rather than a *conscious*, disregard of the risk and therefore reflects a *mens rea* lesser than even simple recklessness and more in line with simple negligence. *Id.* at 437. ("'Thoughtless disregard' . . . is less than 'conscious disregard,' which is the definition of recklessness under the Model Penal Code."). We find the Fourth Circuit's analysis persuasive, and therefore agree with Ocampo-Cruz that because AWDWISI requires only "culpable or criminal negligence," it encompasses a *mens rea* similar to ordinary negligence and lesser than both plain recklessness and the extreme recklessness required by Model Penal Code aggravated assault.

We next consider whether AWDWISI falls within the generic, contemporary meaning of aggravated assault, despite encompassing a mental state lesser than ordinary recklessness and closer to simple negligence. Several of our sister circuits have held that any offense with a *mens rea* lesser than the extreme recklessness required for Model Penal Code aggravated assault does not meet the generic, contemporary meaning of "aggravated assault." *See United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010) ("Because South Carolina courts have upheld [assault and battery of a high and aggravated nature] convictions in cases involving merely reckless conduct . . . [such] . . . conviction does not qualify categorically as a generic aggravated assault."); *United States v. Esparza-Herrera*, 557 F.3d 1019, 1025 (9th Cir. 2009) (finding that defendant's statute of conviction "encompassed ordinary recklessness, and

5

No. 13-40112

therefore his conviction was not a conviction for generic aggravated assault or a crime of violence"). This circuit, by contrast, has held that although the Model Penal Code may require something beyond simple recklessness, a statute requiring mere reckless nonetheless falls within "the plain, ordinary meaning of the enumerated offense of aggravated assault," because it contains only a "minor difference" from Model Penal Code aggravated assault. *Mungia-Portillo*, 484 F.3d at 817. While distinctions between gradations of recklessness may reflect only minor differences, however, the same cannot be said of the difference between extreme recklessness required for Model Penal Code aggravated assault and a *mens rea* that is lesser than plain recklessness and more akin to ordinary negligence. Indeed, in the context of the enumerated offense of involuntary manslaughter, we have held that something beyond simple negligence is required. *See United States v. Dominguez-Ochoa*, 386 F.3d 639, 645-46 (5th Cir. 2004). We therefore hold that AWDWISI does not qualify as the enumerated offense of "aggravated assault."

## III.

The government argues alternatively that the imposition of the crime of violence enhancement is still proper because Ocampo-Cruz's North Carolina conviction has as an element the "use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 2L1.2 cmt. (1)(B)(iii). Ocampo-Cruz argues that a person may be convicted under § 14-32(b) without the intentional use of force and, as a result, the statute does not have as an element the use, attempted use, or threatened use of physical force against the person of another. He asserts that culpable negligence exists when a safety statute, such as driving under the influence of impairing substances, is violated even unintentionally when it is accompanied by criminal or culpable negligence. Thus, Ocampo-Cruz argues, he was convicted under a statute that

does not require proof of the intentional use of physical force as an element of the offense.

This court employs a categorical approach to determine whether a prior offense is a crime of violence because it has as an element the use, attempted use, or threatened use of force. *Taylor v. United States*, 495 U.S. 575, 602 (1990); *see also Mungia-Portillo*, 484 F.3d at 816. Under the categorical approach, this court determines the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct. *United States v. Medina-Torres*, 703 F.3d 770, 774 (5th Cir. 2012).

"[T]he 'use' of force requires that a defendant intentionally avail himself of that force" and "that the intentional use of force must be an element of the predicate offense if the predicate offense is to enhance a defendant's sentence." *United States v. Vargas–Duran*, 356 F.3d 598, 599-600 (5th Cir. 2004) (en banc). "If any set of facts would secure a conviction under the statute without proof of the intentional use of force against the person of another, then the offense cannot be characterized as a crime of violence for sentence-enhancement purposes." *United States v. Velasco*, 465 F.3d 633, 638 (5th Cir. 2006).

In *United States v. Vargas–Duran*, this court held that the Texas crime of "intoxication assault" did not constitute a crime of violence under § 2L1.2 because physical force was not intentionally used. 356 F.3d at 605-06. The court first determined that the plain meaning of the word "use" requires intent. *Id* at 603. The court next looked to whether the statue of conviction had as an element the use of force. *Id*. at 605. For an element of an offense to include the use, attempted use, or threatened use of physical force, "the intentional use of force must be 'a constituent part of a claim that must be proved for the claim to succeed.'" *Id*. at 605 (quoting *United States v. Williams*, 343 F.3d 423, 432

(5th Cir. 2003)). "If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element−implicit or explicit−of the crime." *Id.*

The Texas statute at issue in *Vargas–Duran* permitted conviction of intoxication assault when the defendant "(1) by accident or mistake, (2) while operating a motor vehicle in a public place while intoxicated, (3) by reason of that intoxication causes serious bodily injury to another." *Id.* at 605 (citing TEX. PENAL CODE ANN. § 49.07 (1994)). Because the language of the Texas statute did not require intentional conduct, the court held that the use of force is not an element of the offense of intoxication assault, and the crime of violence enhancement was improperly applied. *Id.* at 606.

For the same reasons that the least culpable means of violating AWDWISI does not constitute the enumerated offense of aggravated assault, it likewise does not have as an element the use, attempted use, or threatened use of physical force against another. The least culpable means of violating AWDWISI includes an unintentional use of the weapon. *See Jones*, 538 S.E.2d at 923 (finding that violation of North Carolina safety statutes "which prohibit[ ] drivers from operating motor vehicles while under the influence of impairing substances . . . constitutes culpable negligence as a matter of law," and defining culpable negligence as "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others" (internal quotations and citations omitted)); *State v. Johnson*, 325 S.E.2d 253, 255 (N.C. App. 1985) (finding that "driving under the influence of alcohol constitutes a *thoughtless* disregard of consequences or a heedless indifference to the safety and rights of others . . . . [t]his is culpable negligence" (internal quotations omitted)); *State v. McGill*, 336 S.E.2d 90, 92-93 (N.C. 1985) (finding that in the context of a AWDWISI violation, "[a]n intentional, wilful or wanton

violation of a statute . . . designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence" (internal quotations and citations omitted)). Such unintentional use of a weapon does not fall under the "use, attempted use, or threatened use of the weapon" of physical force convention. *See Vargas-Duran*, 356 F.3d at 603 ("[H]ow could one intentionally attempt to unintentionally use force, or intentionally threaten to unintentionally use force? The force, so to speak, of this rhetorical question only bolsters our belief that 'use' requires intent."); *see also Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004) (finding in the context of an 18 U.S.C. §16(b) case involving a Florida conviction for driving under the influence and causing bodily injury that "use" requires active employment, because "[w]hile one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident").

The government attempts to distinguish *Vargas-Duran* on the basis that the statutory language in the Texas statute differed from the language in the North Carolina statute; specifically that the elements of the Texas statute include the accidental use of a weapon. This argument misses the point. The conduct that supports an AWDWISI conviction includes a similar lack of intentional conduct, which was insufficient to support a crime of violence enhancement in *Vargas-Duran*. 356 F.3d at 604.[2]

---

[2] The government cites to *Bland v. United States*, to support its contention that the North Carolina statute has as an element the use, attempted use, or threatened use of physical force against the person of another. In *Bland v. United States*, No. 10-CV-3249, 2012 WL 6962906, at *14 (E.D.N.Y. Sept. 18, 2012), the magistrate judge issued a report holding that a conviction for AWDWISI satisfied the residual clause of the Armed Career Criminal Act because a conviction under the North Carolina statute could not be obtained based on strict liability, omissions, negligence, or recklessness. The Government notes that the magistrate judge found AWDWISI required a showing of either intent or implied intent and, as a result, was not akin to drunk driving statutes that do not contain a mens rea requirement. *Id*. at 15. Although our holding arguably conflicts with the magistrate judge's decision in *Bland*, we cannot ignore the precedent from the North Carolina Supreme Court

No. 13-40112

As such, we find that a conviction for AWDWISI does not have as an element the use, attempted use, or threatened use of physical force against the person of another, sufficient to impose a crime of violence enhancement.

## IV.

Finally, Ocampo-Cruz also asserts that the district court erred in counting the criminal history points for his sentence for driving while impaired and AWDWISI separately, thereby assessing six, rather than three, criminal history points. Because the sentences were imposed on the same day and there was no intervening arrest, Ocampo-Cruz is correct that the district court should not have counted the two sentences separately. U.S.S.G § 4A1.2(a)(2) ("If there is no intervening arrest, prior sentences are counted separately unless . . . the sentences were imposed on the same day."). The government concedes as much. However, Ocampo-Cruz failed to raise this issue with district court, so our review is for plain error only. *United States v. Tuma*, 738 F.3d 681, 690 (5th Cir. 2013). Accordingly, we will only vacate the sentence if the district court's error affected Ocampo-Cruz's substantial rights. *Id.* The district court's error did not lead to any change in his criminal history category and therefore did not "affect[] the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and citation omitted). As a result, he cannot show plain error. *Id.*

AFFIRMED in part; REVERSED in part and REMANDED for resentencing.

---

when it held that defendant may be convicted of AWDWISI provided there was "culpable or criminal negligence, defined as "such recklessness or carelessness, proximately resulting in injury or death, as imports a *thoughtless disregard* of consequences or a heedless indifference to the safety and rights of others." *State v. Jones*, 538 S.E.2d 917, 923 (N.C. 2000) (internal quotations and citations omitted) (emphasis added).