# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41125

United States Court of Appeals
Fifth Circuit

**FILED**
March 3, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JUAN ALAY, Also Known as Juan Alay-Mendez,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Juan Alay was convicted of illegal reentry. The district court applied a crime-of-violence ("COV") enhancement under the sentencing guidelines based on Alay's conviction of rape in California. Alay appeals the sentence by challenging the enhancement, asserting that conviction under the California statute is possible with only a negligent *mens rea*, while application of a COV enhancement requires a more culpable mental state, thus rendering the COV

No. 15-41125

enhancement impermissible under the categorical approach in *Mathis v. United States*, 136 S. Ct. 2243 (2016). We affirm.

I.

Alay pleaded guilty of illegal reentry in violation of 8 U.S.C. § 1326. The presentence report ("PSR") recommended a 16-level enhancement. Alay had been deported for a conviction of rape under California Penal Code § 261(a)(3).[1] The probation officer deemed that to be a COV under U.S. Sentencing Guidelines ("U.S.S.G.") § 2L1.2(b)(1)(A)(ii) and recommended the enhancement, because a person convicted of illegal reentry faces a 16-level enhancement if the crime for which he was deported was a COV.

The guidelines define a COV to be

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id.* cmt. n.1(B)(iii). Further, the guidelines define "forcible sex offense[]" as an offense "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." *Id.*

Section 261(a)(3) defines rape as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [w]here a person is prevented from resisting by intoxicating or anesthetic substance . . . and this condition was known, or reasonably should have been known, by the accused." Alay objected to the enhancement, stating that a conviction under Section 261(a)(3) does not qualify as a COV because it can be committed with a

---

[1] Neither party contests that Alay's previous conviction was under this specific portion of the California Penal Code.

2

No. 15-41125

negligent belief that the victim could resist, making it broader than the definition of "forcible sex offense" within the notes to U.S.S.G. § 2L1.2. At sentencing, Alay repeated the objection, for substantially the same reasons. The district court overruled the objection and sentenced him to 41 months, a within-guidelines sentence. Without the COV enhancement, the guideline range would have been 15–21 months.

## II.

Because Alay objected to the COV enhancement both when it first appeared in the PSR and at sentencing, he has preserved the objection, and we review his sentence *de novo*. *United States v. Hernandez-Rodriguez*, 788 F.3d 193, 195 (5th Cir. 2015). In addition, "[w]e review the district court's characterization of a prior offense as a [COV] *de novo*." *United States v. Flores-Gallo*, 625 F.3d 819, 821 (5th Cir. 2010) (per curiam).

We take a "categorical" approach in "determining whether a prior conviction qualifies as a [COV] under the Guidelines." *United States v. Rodriguez*, 711 F.3d 541, 549 (5th Cir. 2013) (en banc). "Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct." *Id.*

> [O]ur application of [the] categorical approach to a prior state conviction proceeds in the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated

offense category.

*Id.* at 552–53 (internal footnotes omitted).

A necessary corollary is that there is no need to examine anything beyond the plain meaning of the guidelines if the offense category is defined in the guidelines. Commentaries to the guidelines, including the notes, are binding on us unless they are plainly inconsistent with the guidelines. *United States v. Vargas-Duran*, 356 F.3d 598, 602 (5th Cir. 2004) (en banc). If the defendant was convicted under a statute matching the offense as the generic offense defined in the guidelines, or if the statute of conviction was narrower than in the guidelines, a COV enhancement is appropriate.[2]

For this COV enhancement to be appropriate, then, the elements of Alay's conviction under Section 261(a)(3) must match the offense categories in Section 2L1.2(b)(1)(A)(ii) and its accompanying notes. Specifically, to uphold the sentence, we would need to conclude that the California conviction qualifies as a "forcible sex offense" under the guidelines. It does.[3]

The guidelines commentary defines a forcible sex offense to include any offense "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). On its face, that definition is clear enough that we can apply its plain meaning, as the first step of *Rodriguez* dictates. *See Rodriguez*, 711 F.3d at 552–53. Forcible sex offenses are what the guidelines

---

[2] *See, e.g.*, *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 378 (5th Cir. 2006), *abrogated on other grounds by Rodriguez*, 711 F.3d at 554–55.

[3] The parties also dispute whether Alay's conviction could fit within the guidelines' catch-all provision for other non-specific COVs: "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Because the California conviction qualifies as a forcible sex offense, we do not address this second issue.

say they are. *See United States v. Herrera*, 647 F.3d 172, 178 (5th Cir. 2011). Nothing in *Rodriguez* changes *Herrera*.

Having concluded that forcible sex offense is defined, all that remains is to examine whether the elements of conviction under Section 261(a)(3) match the definition of forcible sex offense under the guidelines. They do.

The guideline definition of forcible sex offense is broad and includes no requirement of *mens rea*. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Specifically, the guidelines define a forcible sex offense as an offense "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." *Id.* Notably absent from this definition is any mention of a required mental state; indeed, the plain meaning of the guidelines is that a forcible sex offense is any offense that fits the definition delineated above, regardless of *mens rea*.

A defendant is guilty of rape under Section 261(a)(3) only if "a person is prevented from resisting by intoxicating or anesthetic substance." The statute permits convictions only where consent was not given or where it was given but was invalid because of intoxication—in other words, where consent was "involuntary, incompetent, or coerced," as under the guidelines. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The other requirements of Section 261(a)(3)—that the victim not be the perpetrator's wife and that the perpetrator either knew, or should have known, that the victim could not resist—serve only to narrow the California offense beyond what the guidelines command. The elements match, and Alay's conviction qualifies as a COV.

Alay presents three theories why we should vary from this approach; we reject them all. First, he references *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004), in which the Court construed the "crime of violence" definition in 18 U.S.C. § 16 to exclude crimes committed with a negligent mental state. But there is

no necessary inconsistency between the Supreme Court's saying that a COV cannot generally be committed with a negligent *mens rea* and having a specific definition of a specific type of COV that states that a particular COV can be committed with any sort of mental state. Moreover, the Court in *Leocal* gave no indication that it intended its definition of COV in 18 U.S.C. § 16 to be a general definition of COV within the entirety of the United States Code and sentencing guidelines. There is no obvious reason why a definition of COV in one statute should override a more specific definition in the guidelines, and Alay does not offer us one.

Second, Alay asks us to consider *United States v. Dominguez-Ochoa*, 386 F.3d 639 (5th Cir. 2004), and *United States v. Ocampo-Cruz*, 561 F. App'x 361 (5th Cir. 2014), in which we excluded crimes that have a *mens rea* of negligence from being considered COVs. This comparison fails because the terms being construed in those cases were undefined in the guidelines.

*Dominguez-Ochoa* dealt with manslaughter, and whether involuntary manslaughter counted as a COV, but there was no guideline definition of "manslaughter." *Dominguez-Ochoa*, 386 F.3d at 643 ("As discussed, [the relevant portion of the Guidelines] does *not* define manslaughter (or involuntary manslaughter)."). Because there was no definition, the panel looked to the generic, contemporary meaning of manslaughter to determine whether involuntary manslaughter qualified. *Id.* at 644–46.

Similarly, *Ocampo-Cruz* examined whether a North Carolina statute criminalizing assault with a deadly weapon inflicting serious injury constituted aggravated assault for purposes of a COV enhancement. *Ocampo-Cruz*, 561 F. App'x at 362. Again, "aggravated assault" went undefined in the guidelines, so the panel looked to the Model Penal Code to determine the generic, contemporary meaning. *Id.* If the guidelines did not define forcible sex

offense, these cases would be relevant.  But because they do, there is no reason to look to outside sources to undermine their plain meaning.

So too with Alay's final contention—that we should look to the Model Penal Code's definition of rape by intoxication.  This runs into the same problem that the argument based on *Dominguez-Ochoa* and *Ocampo-Cruz* does— why, when the guidelines are so clear, should we gainsay them?  True enough, Section 213.1(1)(b) of the Model Penal Code requires that the defendant in a rape-by-intoxication case have administered the intoxicant to the victim.  The guidelines, however, plainly do not require that—but only that "consent to the conduct [be] not given or . . . not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced."  U.S.S.G. § 2L1.2 n.1(B)(iii). Where an offense is defined so clearly, *Rodriguez* mandates that we follow the plain meaning as defined in the guidelines, precisely to avoid this sort of definitional morass.  *See Rodriguez*, 711 F.3d at 552–53.

The judgment of sentence is AFFIRMED.