**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 26, 2009

Charles R. Fulbruge III
Clerk

No. 07-11276

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

CURTIS LEE ELLIS

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On September 4, 2007, Judge Lynn of the United States District Court for the Northern District of Texas accepted defendant-appellant Curtis Lee Ellis' guilty plea as to three counts of bank robbery in violation of 18 U.S.C. § 2113. Previously, Ellis had been convicted of common law robbery and attempted common law robbery in North Carolina, leading the probation officer to recommend a career offender enhancement under Federal Sentencing Guideline § 4B1.1. Applied this enhancement, the district court sentenced him to 168 months of imprisonment. Ellis appeals his sentence on the grounds that his prior conviction for attempted common law robbery does not qualify as a "crime

of violence" under § 4B1.2 because North Carolina broadly defines the term "attempted." We conclude that Ellis has forfeited the right to challenge this potential error in the use of the North Carolina conviction by failing to object before the district court. We offer a full narrative of the path Ellis would have us travel, all without any whisper of it uttered in the district court. Doing so points toward the large interest such an undertaking would trample.

## I

The district court sustained Ellis' only two challenges to the Presentence Report, refusing to apply enhancements for a "threat of death" and "bodily injury." This worked no change in Ellis' final sentencing range because the court found Ellis to be a career offender and enhanced under Guideline § 4B1.1, predicated on previous "crimes of violence." This set Ellis's total offense level at 29 after a three-point adjustment for acceptance of responsibility.[1] Coupled with his criminal history category of VI, his sentencing range was 151–188 months.[2]

Despite the fact that Ellis' criminal history was the most salient factor in his sentence, the PSR's treatment of it went unchallenged. The PSR grounded the career offender enhancement in Ellis's convictions in North Carolina for common law robbery and attempted common law robbery, finding them to be "crimes of violence" under the Guidelines. Under Guideline § 4B1.1(a), a career offender enhancement applies if, inter alia, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

---

[1] *See* U.S.S.G. § 4B1.1(b)(C); *see also* 18 U.S.C. § 2113(a).

[2] Without this enhancement, his total offense level would have been 22, for a Guidelines sentence of 84-105 months.

Ellis accepts that this court has held that common law robbery under North Carolina law is a crime of violence as defined by § 4B1.2.[3] But he urges that in North Carolina, *attempted* robbery is not a crime of violence because state law defines that offense—specifically the "overt act" requirement—more broadly than most other states.

Guideline 4B1.1(a) defines a career offender as (1) one who is eighteen at the time he committed the current offense, (2) which must be a felony that is a crime of violence or a controlled substance offense, and (3) the offender must have two previous convictions that fall into either of those categories. Section 4B1.2 defines "crime of violence" as a crime punishable by imprisonment for a term greater than one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another, or is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[4] The application notes provide further definitional guidance:

> "Crime of violence" includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.[5]

---

[3] *See* U.S. v. Moore, 223 F. App'x 422, 424, 2007 WL 954323, **1 (5th Cir. Mar. 2007).

[4] U.S.S.G. § 4B1.2(a).

[5] *Id*. § 4B1.2 cmt. n.1.

Finally, the application notes also include within the definition of crime of violence "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."[6]

As this definition suggests, a crime may fall within one of the enumerated categories, or within the one of the two general provisions, the first requiring the predicate crime to have as "an element the use, attempted use, or threatened use of physical force against the person of another," and the second requiring the prior crime to involve explosives or "by its nature" to present "a serious potential risk of physical injury to another."[7] Ellis argues that his conviction in North Carolina for attempted common law robbery does not fall within the enumerated category of robbery (defined to include attempted robbery), or within either of the two catch-all provisions.

The Guidelines do not define "attempt" or "robbery," leaving that task to the courts. This court uses a common sense approach to determine if a prior conviction is categorically an enumerated offense, deciding whether an offense is attempted robbery according to its ordinary, contemporary, and common meaning.[8] In *Taylor*, the Supreme Court defined burglary using "the generic

---

[6] *Id.*

[7] *See* U.S. v. Dentler, 492 F.3d 306, 313 (5th Cir. 2007).

[8] *See* U.S. v. Dominguez-Ochoa, 386 F.3d 639, 642–43 (5th Cir. 2004) ("Taylor instructs that where, as here, the enhancement provision does not specifically define the enumerated offense, we must define it according to its 'generic, contemporary meaning' and should rely on a uniform definition, regardless of the 'labels employed by the various States' criminal codes.'") (*quoting* Taylor v. U.S., 495 U.S. 575, 598, 592 (1990)).

sense in which the term is now used in the criminal codes of most States."[9] If the state definition for an offense is broader than the generic definition, a conviction under that state's law cannot serve as a predicate for the enhancement.[10]

In an unpublished opinion, this court considered whether common law robbery under North Carolina law is categorically a crime of violence pursuant to § 4B1.2.[11] The court generically defined robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving [immediate] danger to the person."[12] North Carolina courts have defined common law robbery as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear."[13] The court in *Moore* concluded that the state's definition of robbery "substantially corresponds" to the generic definition and thus was a crime of violence.[14]

Recognizing that the common law robbery conviction was properly used to support his career offender status as a crime of violence, Ellis now seeks to

---

[9] 495 U.S. at 598; see also U.S. v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir. 2006) ("To establish the generic contemporary meaning of an enumerated offense, we consider, inter alia, the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries.").

[10] *See* Dominguez-Ochoa, 386 F.3d at 646.

[11] *Moore*, 223 F. App'x at 422.

[12] *Id*. at 423 (*quoting* U.S. v. Santiesteban-Hernandez, 469 F.3d 376, 380 (5th Cir. 2006)) (alteration in original) (internal quotation marks omitted). In *Santiesteban-Hernandez*, the court noted that "The majority of states require property to be taken from a person or a person's presence by means of force or putting in fear." 469 F.3d at 380.

[13] *Id*. at 424 (*quoting* State v. Parker, 369 S.E.2d 596, 600 (N.C. 1988)).

[14] *Id*.

challenge the inclusion of his *attempt* conviction in reaching the crime of violence standard for Guidelines purposes.

To resolve the question in this case we would need to define the generic, contemporary meaning of "attempt" and to compare this definition with North Carolina's use of that term, no easy task. Professor LaFave notes that the actus reus requirement for attempt crimes is very difficult to define with precision.[15] Ellis argues that the trend among the states is toward the "substantial step" language of the Model Penal Code. The Model Penal Code defines attempt as follows:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
> (a) purposely engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be; or
> (b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or
> (c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.[16]

Subsections (a) and (b), according to Ellis, are variations of the proximity approach, which require the actor to take steps approaching the accomplished

---

[15] 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.4, at 218 (2d ed. 2003) ("Precisely what kind of act is required is not made very clear by the language which has traditionally been used by courts and legislatures.").

[16] Model Penal Code § 5.01(1).

crime, often nearly completing the crime.[17] Subsection (c) is the broadest category under the Code, requiring only a "substantial step" to completing the crime. In the difference between this phrase and the "slight acts" language of North Carolina law lies the essence of Ellis's argument.

Ellis argues from LaFave that twenty-two states have adopted the substantial step test of the Model Penal code, and he notes that all twelve circuit courts (in contexts other than determining a generic, contemporary meaning under the Guidelines), the military courts, and the courts of four other states have adopted this test.[18] Ellis cites approvingly the Second Circuit's opinion in *Sui v. INS*, in which the court noted a shift in the meaning of "attempt": "As in *Taylor*, the modern meaning of 'attempt' has evolved from the classic common-law definition of the term, and the elements of intent and a substantial step toward commission set out in the Model Penal Code make up the most commonly used 'attempt' definition today."[19]

Ellis points out that North Carolina has not codified the crimes of either robbery or attempt.[20] The North Carolina Supreme Court, he argues, has defined the actus reus requirement of attempt broadly. He cites *State v. Bell*, in which that court opined: "Because 'the reason for requiring an overt act is that without it there is too much uncertainty as to what the intent actually was,'

---

[17] *See* LAFAVE § 11.4(b), at 220.

[18] He further notes that New York has adopted another narrow proximity test, requiring the actor to have carried "forward within dangerous proximity to the criminal end to be attained." People v. Mahboubian, 543 N.E.2d 34, 45 (N.Y. 1989).

[19] 250 F.3d 105, 116 (2d Cir. 2001).

[20] *See* N.C. GEN. STAT. §§ 14-1.5, 14-87.1 (setting punishments for attempt and robbery without defining them).

'whenever the design of a person to commit a crime is clearly shown, slight acts in furtherance of the design will constitute an attempt.'"[21] Ellis notes that a minority of states has adopted the "slight acts" test, and he argues this language is inconsistent with the generic, contemporary meaning of attempt.

Ellis advances two arguments as to why the slight acts test and the substantial step tests are different. First, he argues that the word "slight" is the polar opposite of "substantial." Second, he argues the two different tests "embody fundamentally distinct rationales for the criminalization of attempted offenses." Ellis says that the slight acts test uses the "act" merely to confirm an intent to commit the attempted crime, and he cites a Nevada case describing this test as follows: "[W]e emphasize the inverse relationship which exists between the defendant's intent to commit the crime and the performance of an overt act toward the commission of the crime."[22] Thus, when the actor's intent is clear, the act requirement is minimal.[23]

In contrast, Ellis argues, the substantial step test imposes an independent actus reus requirement, and he cites this court's decision in *United States v. Oviedo*, in which we noted that the overt act requirement protects against punishment for mere thoughts: "[T]he possibility of error is mitigated by the requirement that the objective acts of the defendant evidence commitment to the criminal venture and corroborate the mens rea. To the extent that this requirement is preserved it prevents the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences,

---

[21] 316 S.E.2d 611, 616 (N.C. 1984) (*quoting* 21 AM. JUR.2D CRIMINAL LAW § 159 (1981)).

[22] Van Bell v. State, 775 P.2d 1273, 1275 (Nev. 1989).

[23] *See id.*

unreliable forms of testimony, and past criminal conduct."[24] The court concluded: "Thus, we demand that in order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying mens rea, mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law."[25] The court in *Oviedo* relied on objective acts not merely as evidence of the actor's intent, but as an independent indicator of criminal activity. Based on this divergence of language and purpose, Ellis concludes that North Carolina's slight acts test is fundamentally different from, and broader than, the generic substantial step test.

On the other hand, *United States v. Mandujano*, a case upon which *Oviedo* relies, discusses at length the preparation-attempt distinction and settles on the substantial step language.[26] The court then states: "The phrase 'substantial step,' rather than 'overt act' . . . indicates that the conduct must be more than remote."[27] This definition seems to equate the substantial step test with *any* act that crosses the line from preparation to execution. The court also quoted various cases describing the preparation-attempt continuum with such language as "no definite line" and "matter of degree."[28] Here we would be required to decide whether the degree of difference between substantial steps

---

[24] 525 F.2d 881, 885 (5th Cir. 1974) (citation omitted).

[25] *Id.*

[26] 499 F.2d 370, 373-77 (5th Cir. 1974).

[27] *Id.* at 377.

[28] *Id.* at 375.

and slight acts is great enough to warrant differing treatment under the Guidelines, a close question.

## II

The government argues that there was no error and certainly no plain error. By the government's argument, the actual state of North Carolina law is closer to the substantial step test.[29] It points to *State v. Miller*, in which the North Carolina Supreme Court stated: "The elements of an attempt to commit any crime are: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense."[30] The court explained the "overt act" requirement in this way:

> In order to constitute an attempt, it is essential that the defendant, with the intent of committing the particular crime, should have done some overt act adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.[31]

---

[29] *Cf. United States v. Taylor*, 529 F.3d 1232, 1237–38 (9th Cir. 2008) (finding that Arizona's attempt statute, which used the phrase "any step," was broader than the federal definition, but that Arizona courts interpreted the statute to mean "substantial step").

[30] 477 S.E.2d 915, 921 (N.C. 1996).

[31] *Id.* (*quoting* State v. Price, 184 S.E.2d 866, 869 (N.C. 1971)) (emphasis added).

Based on this language, the government argues that North Carolina imposes a "substantial burden on the type of overt act that will support an attempt conviction" very similar to the substantial step test.

Ellis contends that the two North Carolina cases he cited, *Bell* and *State v. Henderson*,[32] both of which recite and apply the slight acts test, are the correct statement of North Carolina law. He cites *James v. United States*,[33] in which the Supreme Court determined whether attempted burglary under Florida law presented a serious risk of injury. The Court examined Florida's law "as interpreted by that State's highest court." [34] Thus, Ellis argues, *Bell*, as an opinion of the North Carolina Supreme Court that has not been overruled, is the law of the state. He also notes that *Henderson* was decided only last year and applies the same test. Ellis further argues that *Miller* does not change the analysis because that case merely held that mere preparation is insufficient to support an attempt conviction. He finds this enunciation of the standard unhelpful because it does not provide any guidance on the distinction between a slight act and a substantial step. An overt act, he argues, is beyond mere preparation, but the question here is when that line is crossed. North Carolina penalizes slight acts, whereas most states require more.

Even if we were to accept Ellis's contention that slight acts and substantial steps are two fundamentally different approaches to testing the sufficiency of an overt act for a criminal attempt conviction, we are left with the difficulty of where North Carolina falls in the continuum between those poles. The North

[32] 642 S.E.2d 509 (N.C. App. 2007).

[33] 550 U.S. 192, 127 S. Ct. 1586 (2007).

[34] 127 S. Ct. at 1596.

Carolina Supreme Court has announced the slight acts test in *Bell*, but the language in *Miller* appears on first blush to require something more. On closer examination, *Miller* does not appear to change *Bell*'s framework. The phrases "commencement of the consummation," "not be merely preparatory," and "first or some subsequent step" all point to an overt act requirement that crosses a line between planning and execution but does not elucidate the distinction between the two tests at issue. The word "first" coupled with the word "slight" seemingly allows a minor act to suffice for an attempt conviction. This standard is broader than the requirement of a substantial step, which is more than confirmation of the actor's intent; it is "conduct . . . strongly corroborative of the firmness of the defendant's criminal intent."[35]

The government notes that in the two North Carolina cases Ellis cites the court required a substantial step in actual practice. In *Bell*, for example, the court described the actions of the defendant and another perpetrator in preparing to rape their victims, namely, ordering the victims to remove their clothes.[36] In *Henderson*, a case that recited the slight acts test, the defendant removed his pants and requested the victim to engage in sexual conduct.[37] These factual scenarios, the government argues, do not support a conclusion that something less than a substantial step is actually required under North Carolina law. Ellis replies that evidence of a substantial step may have been present in these cases, but that fact does not change the courts' statements of the applicable law.

---

[35] *Mandujano*, 499 F.2d at 377 (emphasis added).

[36] 316 S.E.2d at 616.

[37] 642 S.E.2d at 513.

In *United States v. Sarbia*, the Ninth Circuit analyzed Nevada's attempt statute and case law, which uses the "slight act" approach, and concluded that the state's law was coextensive with the federal, "substantial step" approach:

> It is true that Nevada has formulated the elements of attempt using slightly different language from that of the common law. Nevada requires proof that the defendant has performed "some act" rather than a "substantive step" towards the commission of the crime. The Nevada Supreme Court has held that a conviction for attempt will be affirmed if the evidence shows that the defendant has performed a "slight act," so long as his or her intent to commit the crime is clear. However, after reviewing numerous Nevada Supreme Court opinions on the subject, we are persuaded that the terms "some act" or "slight act," as used in the Nevada caselaw, have the same operational meaning as "substantial step," as used in the traditional common-law definition of attempt.[38]

In sum, the question is close as to whether Ellis' North Carolina attempted common law robbery falls within the generic, contemporary meaning of attempt in this context. The question as to whether the attempt falls under one of the other catchall provisions of § 4B1.2 is also close, but for the reasons stated below, we decline to enter that even murkier, and less thoroughly argued, area.

III

Ellis admits that he did not object to the career offender enhancement and that this court's review is for plain error. Plain error doctrine provides that:

> An appellate court may not correct an error the defendant failed to raise in the district court unless there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met an appellate court may then exercise its discretion to notice a

---

[38] 367 F.3d 1079, 1086 (9th Cir. 2004) (citations omitted).

forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.[39]

Our narrative of the decisional path this court would have to traverse to resolve the merits of defendant's objection to his sentence, an objection never made to the trial court, makes plain beyond peradventure that any error was not plain. As Ellis would have it, all of the close calls fall his way, and that is enough. Yet, the error said to be plain was never the subject of objection by able trial counsel. Putting aside its obscurity at trial, even now after full briefing and oral argument the error is not plain or obvious, indeed it is most uncertain whether there was any error at all.

Ellis cites dicta from this court suggesting that any erroneous application of a "crime of violence"-related enhancement will ipso facto be plain. But on closer examination neither the case from which he draws the dicta,[40] nor the other cases he cites,[41] support his position. Those cases are not analogous. Their brief analyses turn on the elements of the crime sustaining the conviction or

---

[39] U.S. v. Mares, 402 F.3d 511, 520 (5th Cir. 2005) (internal quotations and citations omitted).

[40] U.S. v. Alfaro, 408 F.3d 204, 209 (5th Cir. 2005) ("The second prong of the plain-error test is also met because this court has consistently held that when a district court errs in concluding that a defendant was convicted of a 'crime of violence,' the error is plain.").

[41] U.S. v. Dentler, 492 F.3d 306, 313-14 (5th Cir. 2007); U.S. v. Gonzalez-Chavez, 432 F.3d 334, 336-37 (5th Cir. 2005); U.S. v. Insaulgarat, 378 F.3d 456, 466-471 (5th Cir. 2004) (concluding, at 471, "[t]his conclusion clearly and plainly follows from the terms of section 4B1.2(a), the wording of the Florida statute and the indictment, and our jurisprudence construing section 4B1.2. Therefore it was plain error . . . ."); U.S. v. Gracia-Cantu, 302 F.3d 308, 312-13 (5th Cir. 2002); U.S. v. Dixon, 265 F. App'x 383, 385-86, 2008 WL 410705, **2-**3 (5th Cir. 2008); U.S. v. Sanchez-Torres, 136 F. App'x 644, 647-48, 2005 WL 1463102, **2-**3 (5th Cir. 2005); U.S. v. Lopez-Hernandez, 112 F. App'x 984, 985, 2004 WL 2428675, **1 (5th Cir. 2004); U.S. v. Aguilar-Delgado, 120 F. App'x 522,523-24, 2004 WL 2801794, **1 (5th Cir. 2004).

upon other straightforward applications of case law to correct what would be more promising candidates for clear error. By contrast, the inquiry here yields no such clarity;[42] that is, the "categorical" inquiry sheds little light. Our judgment draws strength from the Supreme Court's most recent guidance on this question. In *Puckett v. United States*, Justice Scalia, writing for the majority, reaffirmed the principle that to satisfy the second prong of plain error inquiry, "the legal error must be clear or obvious, rather than subject to reasonable debate."[43]

We need not decide whether Ellis' attempted common law robbery conviction should have been permitted to sustain the enhancement. The record reflects a district court soliciting discussion from counsel, examining the PSR and other evidence assiduously, and carefully considering the facts of Ellis' case, including the nature of the instant offenses as well as his extensive criminal history, in sentencing him.

This emphasis on the second prong of plain error analysis is particularly important given the development of this court's case law on the third and fourth prongs of the plain error test in the sentencing context, where the court has been generous with remand, often finding that errors leading to substantial increases in sentences, even those errors not raised until appeal and thus subject to plain

---

[42] *See* U.S. v. Sanchez-Garcia, 2009 WL 139591, *2 (5th Cir. 2009) ("Because this Circuit has not rule on this interpretation of § 4A1.2(k), and because there is a circuit split on the issue, we cannot hold that the district court plainly erred . . . . In light of this disagreement in the circuits, the district court did not plainly err . . . .").

[43] No. 07-9712, 2009 WL 763354, *3 (March 25, 2009).

error review, merited remand,[44] although we are not convinced that the case law on this point is settled or as categorical as language in some cases might make it seem. To our eyes, the lack of any clear error here means that Ellis' sentence should stand.

Even if we were inclined, this is no occasion to offer metrics for the severity of an increase worked by decisions later found to have been error and such a departure as to summon our discretion to correct an injustice. Not every error that increases a sentence need be corrected by a call upon plain error doctrine. It bears emphasis that all defendants' appeals challenging a sentence rest on the practical premise that the sentence should be less. The doctrine of plain error serves powerful institutional interests, including securing the role of

---

[44] A survey of cases indicates some variation in treatment of plain error review, but with a generally permissive approach to the third and fourth prongs, and especially where a significantly different Guidelines range was erroneously advised. *See, e.g.*, Dentler, 492 F.3d at 314 (quoting broad language concerning remand on sentencing error, but proceeding to analyze for prejudice, which it found); *Alfaro*, 408 F.3d at 209; U.S. v. Pennell, 409 F.3d 240, 245-46 (5th Cir. 2005) (noting clear showing of prejudice in this case, but leaving future cases open); U.S. v. Villegas, 404 F.3d 355, 364-65 (5th Cir. 2005) (finding prejudice where erroneous Guidelines range and correct range did not overlap); *Insaulgarat*, 378 F.3d at 468 n. 17 (same); U.S. v. Gracia-Cantu, 302 F.3d 308, 313 (5th Cir. 2002) (same); U.S. v. Aderhold, 87 F.3d 740, 744 (5th Cir. 1996) (as to third prong, finding prejudice "because, absent an [erroneous] upward departure, [the defendant] would have received a lesser sentence"; as to fourth prong, noting "permissive" nature of plain error review but choosing to vacate and remand); U.S. v. Franks, 46 F.3d 402, 405 (5th Cir. 1995) ("Because Franks erroneously and mistakenly received a substantially longer sentence under the guidelines than he should have received, the fairness and integrity of the judicial proceeding was seriously affected."); U.S. v. Brownlow, 87 F. App'x 337, 338-39; 2004 WL 96787, **1 (5th Cir. 2004) (seemingly assuming prejudice; declining to "speculate" as to whether lower sentence would in fact have been imposed); U.S. v. Colindres, 98 F. App'x 347, 349, 2004 WL 1161832, **1 (5th Cir. 2004) (overturning where sentence imposed was greater than highest sentence advised under correct Guidelines sentence); U.S. v. Vivar-Acosta, 112 F. App'x 328, 329, 2004 WL 2296088, **1 (5th Cir. 2004) (same); U.S. v. Luna-Montoya, 80 F. App'x 334, 337-38, 2003 WL 22533191, **3 (5th Cir. 2003). *Cf.* U.S. v. Leonard, 157 F.3d 343, 346 (5th Cir. 1998) (no prejudice); U.S. v. Echavarria, 138 F. App'x 678, 679-80 (5th Cir. 2005) (finding no prejudice).

the United States District Court as the court of first instance, as opposed to a body charged to make recommendations to appellate courts. And even if an increase in a sentence be seen as inevitably "substantial" in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings. To conclude that not correcting the error claimed here casts doubt upon the fairness, integrity, or public reputation of the proceeding drains all content from the doctrine of plain error.

We AFFIRM.