# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2011

Lyle W. Cayce
Clerk

No. 09-60890

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LINDA MCWILLIAMS HARDY,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:08-CR-119

Before JONES, Chief Judge, DENNIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Linda McWilliams Hardy was convicted of knowingly and fraudulently concealing property from her bankruptcy trustee in violation of 18 U.S.C. §152(1) and sentenced to a 35-month term of imprisonment. Hardy appeals, challenging: (1) the sufficiency of the evidence to support her conviction; (2) the district court's decision to allow her bankruptcy attorney to testify at trial; (3) the court's *sua sponte* jury instruction during her closing argument; (4) several statements

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60890

made by the prosecutor during closing argument; and (5) her sentence. We AFFIRM.

## FACTS AND PROCEEDINGS

In 2001, Hardy was injured while working at her place of employment, Gray-Daniels Ford, an automobile dealership. She hired attorney Michael Malouf to file a personal injury lawsuit. Hardy's conviction is based on her concealment of the lawsuit in a subsequent bankruptcy proceeding.

Hardy, who worked as a finance manager, had a history of tax problems with the Internal Revenue Service ("IRS"). From 1995 through 2003, she failed to deduct the correct amount of taxes from her paychecks. In March 2003, the IRS seized Hardy's paycheck because she owed past due taxes and penalties. Attempting to recover her paycheck, Hardy retained a tax attorney, Jim Mallette. Hardy suggested to Mallette that he offer the proceeds of her pending personal injury lawsuit to the IRS in return for the release of her paycheck. According to Hardy, Mallette advised her that the IRS would not accept the proceeds of the pending lawsuit because it was not a "tangible" asset and that she might have to file for bankruptcy. Hardy then retained a bankruptcy attorney, Eileen Shaffer. On April 17, 2003, Shaffer filed Hardy's Chapter 7 bankruptcy petition. Hardy did not disclose her pending personal injury lawsuit on her bankruptcy schedule.

On July 31, 2003, the personal injury lawsuit settled for $437,500. After attorney's fees and expenses, Hardy received $255,036.62. Hardy had not been discharged in bankruptcy at the time she accepted the money. Hardy gave her boss, John Logan, a cashier's check for $200,000 from the settlement proceeds to deposit into his bank account. She testified that she gave the money to Logan to prevent her daughter and son-in-law from accessing it because they were drug addicts who had previously stolen from her.  Logan deposited the check  into his bank account with the notation: "Linda's money, $200,000." Logan testified that

2

No. 09-60890

he put the notation on the check to indicate that the money belonged to Hardy "for Internal Revenue or anybody else that might be looking for it." Hardy spent approximately $50,000, nearly all of the remaining settlement proceeds.

On August 13, 2003, Hardy's debts were discharged in bankruptcy. The following day, Hardy retrieved the $200,000 from Logan. Hardy testified that she did not know that her debts had been discharged in bankruptcy at the time. She eventually deposited the funds into a bank account under her name. Hardy's bankruptcy trustee, Derek Henderson, subsequently learned from Hardy's bank that she had acquired a large sum of money. After confirming the existence of Hardy's assets, Henderson filed a motion to reopen Hardy's bankruptcy case and ultimately recovered $205,000 from Hardy.

On October 9, 2003, Hardy participated in a Bankruptcy Rule 2004 hearing.[1] At the hearing, Hardy testified that her bankruptcy attorney, Shaffer, never asked her whether she had any pending personal injury lawsuits, but conceded that Shaffer did ask her whether she had any class action lawsuits.

Hardy was charged in a six-count indictment alleging violations of 18 U.S.C. § 152, all of which related to her failure to disclose her personal injury lawsuit in her bankruptcy proceedings. Hardy was tried on two counts. A jury acquitted her of one count but found her guilty of violating 18 U.S.C. §152(1) by knowingly and fraudulently concealing property from her bankruptcy trustee. After a series of three sentencing hearings, the district judge sentenced Hardy to 35 months' imprisonment. Hardy timely appealed.

---

[1] Pursuant to Bankruptcy Rule 2004, the bankruptcy court may order the examination of any entity on a motion by any party in interest. FED. R. BANKR. P. 2004(a). A Rule 2004 hearing "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b).

No. 09-60890

## DISCUSSION

### I. Sufficiency of the Evidence

Hardy argues that the evidence was insufficient to support her conviction because it did not show that she had the *mens rea* to violate 18 U.S.C. § 152(1). This court reviews a jury verdict under a "highly deferential" standard. *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). "We will affirm the jury's decision if, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (quotation omitted). We "afford the government the benefit of all reasonable inferences and credibility choices." *United States v. Odiodio*, 244 F.3d 398, 400-01 (5th Cir. 2001) (quotation omitted). We review Hardy's sufficiency challenge *de novo* because she properly preserved her claim by moving for a judgment of acquittal at the close of the government's case and by renewing her motion within 14 days of the guilty verdict. *See United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008).

To be convicted under 18 U.S.C. § 152(1), a defendant must "knowingly and fraudulently" conceal property from the bankruptcy trustee or other persons responsible for the control of property of the bankruptcy estate. 18 U.S.C. § 152(1). Hardy argues that there no evidence that she "knowingly and fraudulently" concealed her personal injury lawsuit.

Sufficient evidence supported the jury's verdict. First, the jury could have inferred that Hardy, who worked as a finance manager, knew that she had a duty to disclose her pending lawsuit from the bankruptcy schedule itself. The bankruptcy schedule calls for the debtor to list all personal property as well as "[o]ther contingent and unliquidated claims of every nature." No property was listed and the box next to "none" was checked. The bankruptcy schedule also asks the debtor to list "all suits and administrative proceedings to which the

No. 09-60890

debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Similarly, no lawsuits were listed and the box next to "none" was checked. Hardy signed a declaration verifying that the bankruptcy schedule was true and correct to the best of her knowledge.

Second, Hardy took the unusual step of entrusting most of her settlement payment to Logan, instead of depositing it in her own bank account. A reasonable jury could infer that Hardy did so because she knew she had a duty to disclose her lawsuit to the bankruptcy trustee. Moreover, she retrieved the money from Logan the day after her debts were discharged in bankruptcy. Although Hardy testified that she gave Logan the money to hide it from her daughter and that she was unaware that her debts had been discharged when she recouped the money, the jury could have found her testimony not credible.

Third, Shaffer testified that it was her practice to ask bankruptcy clients about lawsuits on several different occasions. She testified that she would ask clients whether they were a party to any lawsuits first at the initial client meeting, twice when preparing the bankruptcy schedules because "there's at least two places in the bankruptcy schedules that ask if you're a party to a lawsuit," and again before the meeting of creditors. Although Shaffer testified that she did not have a specific recollection of her meetings with Hardy, the jury could have inferred that Shaffer followed her normal practice and asked Hardy whether she was a party to any type of lawsuit.

Hardy argues that the jury could not conclude that Shaffer asked about all types of lawsuits because Hardy "testified positively that Shaffer never asked her about lawsuits other than class action lawsuits, and Shaffer testified only that it was her usual practice and had no specific recollection of whether she did so in the instant case." In support, Hardy cites *Texas Co. v. Hood*, in which this court held that a jury may not draw factual conclusions that contradict "positive and otherwise uncontradicted evidence." 161 F.2d 618, 620 (5th Cir. 1947). The

5

No. 09-60890

contested conclusions in *Hood* lacked factual support and ran contrary to the testimony of "positive, uncontradicted, and unimpeached testimony of the three eye witnesses." *Id*.

*Hood* is distinguishable because the conclusion the government asked the jury to draw—that Shaffer asked Hardy about all lawsuits—is supported by Shaffer's testimony. *Hood* does not forbid the jury from discrediting Hardy's testimony and inferring that Shaffer followed her usual practice of asking about all types of lawsuits. Viewed in the light most favorable to the verdict, the evidence is sufficient to sustain Hardy's conviction.

II. Shaffer's Testimony

Hardy contends that the district court erred by admitting Shaffer's testimony at trial because it was protected by the attorney client privilege.

> The application of the attorney client privilege is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents. The clearly erroneous standard of review applies to the district court's factual findings and we review the district court's evidentiary rulings for an abuse of discretion. We review the application of the controlling law *de novo*.[2]

*United States v. Seale*, 600 F.3d 473, 492 (5th Cir. 2010) (citations omitted). The privilege "protects communications from the client to the attorney made in confidence for the purpose of obtaining legal advice. *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994) (quotation omitted). "It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney." *Id*.

---

[2] The government argues that our review should be for plain error because Hardy failed to renew her objection to Shaffer's testimony at trial. Because Hardy lodged a pretrial objection to Shaffer's testimony and the district court definitively ruled that it was admissible, Hardy was not required to renew her objection to preserve her claim of error for appeal. FED. R. EVID. 103(a); *United States v. Avants*, 367 F.3d 433, 444 (5th Cir. 2004).

6

No. 09-60890

Even assuming that Shaffer's testimony was privileged, the district court did not err in admitting it because Hardy waived the privilege by testifying about Shaffer's advice at the Bankruptcy Rule 2004 hearing. "A client waives the attorney-client privilege . . . by failing to assert it when confidential information is sought in legal proceedings." *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999). "When relayed to a third party that is not rendering legal services on the client's behalf, a communication is no longer confidential, and thus it falls outside of the reaches of the privilege. Therefore, a client implicitly waives the attorney-client privilege by testifying about portions of the attorney-client communication." *Id.*

At the Bankruptcy Rule 2004 hearing, Hardy testified that Shaffer never asked her whether she had any pending lawsuits of any type, only whether she had any class action lawsuits. By failing to maintain the confidentiality of her communications with Shaffer at this legal proceeding, Hardy waived the privilege.[3] *See Nguyen*, 197 F.3d at 206. Therefore, the district court did not err in admitting Shaffer's testimony.

III. The District Court's Instructions

During his closing argument, Hardy's trial counsel, George L. Lucas, stated that Mallette, "told [Hardy] that a lawsuit is not a tangible asset, and it's not." Lucas argued that many lawsuits result in no recovery for the plaintiff, while others may lead to large recoveries and that "you never know until it's over what it's worth." He also asserted that "many lawyers" would not understand

---

[3] Hardy avers that any waiver at the Rule 2004 hearing was involuntary because an Assistant United States Attorney induced her testimony with a promise of immunity. This alleged promise of immunity is unsupported by the record. Hardy asserts that her trial attorney documented the immunity agreement in a memorandum, but this document was never introduced into evidence and is not part of the record before this court. Hardy did not move to dismiss the indictment based on an agreement of immunity. Moreover, at the Rule 2004 hearing, Hardy asserted her Fifth Amendment right to silence in response to a question asked by the government. That Hardy asserted her Fifth Amendment right undermines her argument that she testified under a promise of immunity.

No. 09-60890

that a pending lawsuit should be listed on a bankruptcy form. At this point, the district court interrupted Lucas's argument and stated:

> THE COURT: Mr Lucas . . . your time is not up, but I have to instruct the jury on a point because I don't want them sending me a note later asking me to explain something. You've used this term "tangible lawsuit." . . . I want to make sure the jury understands what you mean by it. The bankruptcy laws require that a debtor reveal all assets. . . . If a debtor has a lawsuit which is pending, the debtor has to reveal that lawsuit. The trustee makes the determination on whether it's collectible. The trustee makes the determination whether present counsel who is working on a suit will continue to work on it. The trustee makes the determination whether that lawsuit should be pursued as part of the debtor's estate. But the debtor is not excused from reporting the matter on some notion of tangible lawsuit. The debtor has to—the debtor has to reveal the existence of a lawsuit, and the trustee then makes the determination as to its tangibility, its collectability, its legality and everything else. But the debtor is not allowed to make that determination for him or herself.

Hardy contends that the trial judge misstated the law because he did not also inform the jury that if she failed to report the lawsuit absent an intent to defraud, she could not be guilty of the offense.

This court reviews an allegedly erroneous jury instruction to determine "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of the law applicable to the factual issues confronting them."[4] *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002). As Hardy concedes, her failure to object to the district court's

---

[4] Hardy contends that the court's sua sponte instruction is akin to a supplemental jury instruction given in response to a jury's request for further instruction. This court has held that, "when the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury." *Bland v. United States*, 299 F.2d 105, 108 (5th Cir. 1962). The court did not give its instruction in response to a jury query and *Bland* does not apply here.

No. 09-60890

instruction results in plain error review. *See id*. A plain error is an error that is clear or obvious and that affects the defendant's substantial rights. *United States v. Ellis*, 564 F.3d 370, 377 (5th Cir. 2009). This court has the discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation and citation omitted).

The district court's *sua sponte* instruction did not state that Hardy must have knowingly and fraudulently failed to disclose the personal injury lawsuit. However, the district court adequately addressed the *mens rea* requirement in the jury charges.  The court instructed the jury:

> So then the government would have to prove that . . . that the defendant concealed that asset from . . . from the trustee, and that the defendant acted specifically to do so and the defendant did so fraudulently and knowingly. . . . The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of any mistake or accident. . . . The word "fraudulently" means the act was done with intent to deceive or cheat. . . . And therein is where this dispute is really focused. . . . The question then is did the defendant act fraudulently and knowingly in taking the actions that she did. This is a fact question you, the jury, would have to determine.

Viewed as a whole, the court's instructions were not clearly or obviously erroneous.[5] *See Daniels*, 281 F.3d at 183.

IV. Prosecutor's statements during closing argument

Hardy argues that comments made by the prosecutor in his closing argument amounted to prosecutorial misconduct and reversible error. We apply

---

[5] In the alternative, Hardy contends that her trial counsel was ineffective for failing to object to the district court's *sua sponte* instruction during closing argument. Generally, this court declines to review ineffective assistance claims on direct appeal; an exception applies to "rare cases where the record allow[s the court] to evaluate fairly the merits of the claim." *United States v. Kizzee*, 150 F.3d 497, 502 (5th Cir. 1998) (quotation omitted). The record at hand is not sufficiently developed to permit direct review of Hardy's ineffective assistance claim. *See id*. at 502-03 (declining to consider ineffective assistance claim where no testimony was taken nor factual findings made regarding that claim). We decline to consider this claim without prejudice to Hardy's ability to raise it in a 28 U.S.C. § 2255 motion.

a two-step analysis to claims of prosecutorial misconduct. *United States v. Fields*, 483 F.3d, 313, 358 (5th Cir. 2007). First, we assess whether "the prosecutor made an improper remark." *Id.* (citation omitted). If so, then we ask whether the defendant was prejudiced. *Id.* The prejudice step "sets a high bar. . . . The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id.* (citation omitted). Because Hardy failed to object to the prosecutor's closing remarks in the trial court, this court reviews for plain error. *See Mares*, 402 F.3d at 515.

Hardy contends that during closing argument the prosecutor improperly argued that, because Hardy had failed to pay her taxes, she was willing to lie and break the law. The prosecutor stated in his closing argument:

> I think I'll start this argument by pointing out something that Ms. Hardy . . . testified . . . during her cross-examination. I asked her some questions about the money that was listed in her bankruptcy petition that she owed to IRS. And I asked her how many years are outlined in that petition. And I think it went from '95 through '02. Now, I asked her, Well, couldn't you have just asked somebody to start taking deductions out of your paycheck so that maybe you wouldn't have these kind of problems with your taxes year after year after year? And what I recall her response was, Well, I'm not the best when it comes to money, and I needed the money. So year after year after year she's willing to not have taxes deducted from her paycheck. Year after year after year she's willing to put up with and battle with the IRS because she needs the money.

The prosecutor later argued:

> And what do we know from the bankruptcy petition and from her testimony? She wants to keep the money for herself. When she said that I cannot give this money to IRS in 1995, '96, '97, '98, '99, 2000, 2001, 2002 because I need it, she's willing to break the law. . . . Mr. Lucas pointed out that this is not a tax case. And it's not. That

No. 09-60890

> is not what [Hardy] is charged with. She's not charged with having avoided her taxes. The reason I raised the taxes is because the judge instructed you on how you judge the credibility of witnesses. Some of the things you look at, did the person impress you as honest? Did the person who tells you that they're willing to forgo paying their taxes that many years impress you as honest? Did the witness have any particular reason not to tell the truth? Ms. Hardy-Stokes, does she have any interest in this lawsuit? Yes, she does. Did the witness' testimony differ from the testimony of other witnesses?

Hardy argues that the prosecutor improperly argued that she was predisposed to break the law. To determine whether a prosecutor used evidence for the forbidden purpose of arguing propensity, this court engages in a "careful reading of the entire text of the prosecutor's argument." *United States v. Greene*, 570 F.2d 648, 652 (5th Cir. 1978). Considered in its entirety, the prosecutor's argument was primarily directed at attacking Hardy's credibility. A critical piece of the government's theory was that Hardy lied on her bankruptcy petition because she was motivated by her need for money. Although the prosecutor's statements regarding Hardy's willingness to break the law, viewed alone, could be considered improper, the statement could also be construed as a permissible assault on her credibility. Because the statements were not clearly or obviously improper, the purported misconduct fails to reach the level of plain error.[6]

V.  Sentencing

Hardy contends that the district court committed procedural and substantive errors in determining her sentence. Following *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness in light of the sentencing factors in 18 U.S.C. § 3553(a). *See Mares*, 402 F.3d at 518-19.

---

[6] In the alternative, Hardy contends that her counsel was ineffective for failing to object to the prosecutor's statements. We decline to address this claim because the record is not sufficiently developed to permit direct review. *See Kizzee*, 150 F.3d at 502.

No. 09-60890

Pursuant to the Court's directive in *Gall v. United States*, 552 U.S. 38, 51 (2007), we employ a bifurcated test to determine the reasonableness of a sentence. First we determine whether the district court committed any significant procedural error, such as failing to calculate or incorrectly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the factors in § 3553(a), basing the sentence on clearly erroneous facts, or failing to adequately explain the sentence, including any deviations. *Id.* If there is no procedural error, we then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id*. Because Hardy failed to object to her sentence in district court on the particular grounds she raises on appeal, we review for plain error. *Mares*, 402 F.3d at 520.

A. Procedural Errors

Hardy contends that the district court procedurally erred when it (1) presumed the Guidelines were reasonable; (2) misunderstood its ability to grant a variance; (3) refused to grant a variance based on Hardy's family responsibilities; and (4) based her sentence on clearly erroneous facts.

Hardy argues that the district court presumed that the Guidelines were reasonable. A district court commits procedural error when it "appl[ies] a presumption of reasonableness to the Guidelines range." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009). Even assuming that Hardy can establish a clear error, she has not shown the error affected her substantial rights. "In the sentencing context, . . . an appellant can show an impact on substantial rights . . . where the appellant can show a reasonable probability that, but for the district court's error, the appellant would have received a lower sentence." *United States v. Davis*, 602 F.3d 643, 647 (5th Cir. 2010) (citation omitted). Because Hardy fails to make any argument on this issue, she has not met her burden to demonstrate a reasonable probability that she would have received a lower sentence but for the purported error. *See id*.

12

No. 09-60890

Next, Hardy contends that the district court did not understand that it could grant a variance and that it confused departures and variances. This court recognizes three types of sentences: (1) a sentence within the Guidelines range; (2) an upward or downward departure as permitted by the Guidelines; and (3) a non-Guidelines sentence, or variance outside the Guidelines range. *See United States v. Smith*, 440 F.3d 704, 706–07 (5th Cir. 2006). Although the district court did not use the term "variance" to refer to its ability to impose a sentence outside the Guidelines range, it is clear that the district court understood its authority to impose a variance. The district court used the phrase "sentence under the statute," *i.e.*, 18 U.S.C. § 3553, to refer to a variance. It stated:

> [T]his court has considered the advisory Guidelines. And the court doesn't have to follow them. The court has the option. I could resort to the statute, which [Hardy's counsel] has asked me to do in his pleas before the court for his client. He's asked me to put aside the Guidelines and then sentence under the statute. And then if the court then resolves this sentence under the statute, then the court is not bound by this Guideline range, but the court can either sentence under the Guideline range or above the Guideline range.

The record shows that the district court correctly understood the types of sentences that were available. *See Smith*, 404 F.3d at 706–07.

Hardy also contends that the district court improperly rejected her request for a downward variance based on an incorrect belief that family responsibilities were not proper grounds for a variance. Even assuming that the district court misunderstood its authority to grant a variance based on family considerations, Hardy cannot show plain error. At the final sentencing hearing, the district court made clear that even if it could grant a variance based on family considerations, a variance was not warranted in Hardy's case. It stated: "This issue here of impact on family has been considered [by the Guidelines]. And even if it had not been, in this particular instance I'm not persuaded that it impacts

13

No. 09-60890

so greatly or impacts at all that the court should not employ the Guidelines." In view of the district court's determination that Hardy's family considerations did not warrant a variance, Hardy has not shown a reasonable probability that, but for the error, she would have received a lesser sentence.

Last, Hardy contends that the district court based its sentence on clearly erroneous facts because it did not credit her arguments that (1) she spent majority of her earnings on her family prior to filing for bankruptcy; (2) she had accounted for how she spent $50,000 of the settlement proceeds and spent much of it on her family; and (3) her bankruptcy filing was a financial necessity. Most of Hardy's arguments are based on statements that the district court made at the first sentencing hearing. However, the court permitted Hardy to present additional evidence after the first sentencing hearing, and the statements made at that hearing do not represent the ultimate factual findings of the district court at the third and final hearing. In addition, although Hardy alleges that she presented an oral accounting of how she spent the $50,000, most of her alleged expenditures were uncorroborated. The district court's finding that it was "not persuaded that she used those monies for the benefit of her family" is not clearly erroneous given the lack of evidence. Last, Hardy provided detailed financial records for only 2000, 2001, and 2002. She failed to present sufficient documentary evidence to support her contention that family expenditures in 2003 caused her to file for bankruptcy. Hardy has not demonstrated that the district court's sentence was based on clearly erroneous facts.[7]

    B. Substantive Errors

---

[7] Hardy also argues that the district court consulted the 2008 edition of the Guidelines manual instead of the 2003 edition. The Guidelines provide that the court should "use the Guidelines Manual in effect on the date that the defendant is sentenced" unless "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution." Hardy does not explain why the use of the 2008 Guidelines Manual violated the ex post facto clause of the Constitution and has not shown a clear error by the district court.

No. 09-60890

Hardy also alleges that the district court made numerous substantive errors in sentencing her. Where the district court imposes a sentence within a properly-calculated Guidelines range, this court applies a presumption of reasonableness to the sentence, inferring that the district court considered the relevant sentencing factors. *Rita v. United States*, 551 U.S. 338, 347 (2007). To rebut the presumption of reasonableness, Hardy must show that the district court failed to account for a sentencing factor that should have been accorded substantial weight, gave substantial weight to an "irrelevant or improper factor," or made "a clear error of judgment in balancing sentencing factors."*United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Hardy argues that the district court disregarded several factors that would have supported a more lenient sentence. She argues that the court relied on the intended loss of her crime, a sum far greater than the actual loss; that her age and health problems warranted a lesser sentence; and that the crime she committed was a dramatic departure from an otherwise law-abiding life. Hardy has not made a showing sufficient to overcome the presumption that the district court's sentence of 35 months' imprisonment, which was near the lower end of the 33-41 month Guidelines range, was reasonable.

## CONCLUSION

Hardy's conviction and sentence are AFFIRMED.